# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Patricia Ann Beckett

    Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 10-30218

## DECISION AND ORDER

    This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 16). The Debtor filed a response, objecting to the dismissal of her case. (Doc. No. 24). A Hearing was then held on the matter. (Doc. No. 28). At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. The Court has now had this opportunity. Based upon a review of the applicable information, as well as the entire record of this case, including the post-hearing documentation submitted by the Debtor, the Court finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has merit.

## FACTS

    The Debtor, Patricia Ann Beckett, is a married woman, 58 years of age. Although living in the same household, the Debtor is presently estranged from her husband. The Debtor and her husband, however, still share household expenses, but with the evidence tending to show that the Debtor assumes a greater portion of this financial burden.

    On January 16, 2010, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). At the time she filed for bankruptcy relief, the Debtor was employed as an academic advisor with a state university. The Debtor has been with her

In re: Patricia Ann Beckett
Case No. 10-30218

employer for 12 to 15 years, and anticipates that she will continue to work in her present position for the foreseeable future.

From her employment, the Debtor reported that she earns a gross monthly salary of $4,123.71, equating to $49,484.52 annually. The Debtor's husband, who did not seek bankruptcy relief, is retired and receives a pension. On a monthly basis, the Debtor's husband receives $4,558.18 from his pension, amounting to $54,698.16 annually. Based then upon their respective incomes, the Debtor's household has a yearly income of $104,182.68.

From her salary, the Debtor reported that she has $1,424,98 in mandatory, monthly deductions. The Debtor reported that her husband has $919.68 in mandatory, monthly deductions withheld from his pension. Based upon these deductions, the Debtor reported that her household has a net monthly income of $6,337.23.

Against her household income, the Debtor set forth that she personally has $3,195.06 in necessary, monthly expenses. Although not a complete list, the necessary personal expenses claimed by the Debtor included the following expenditures:

| | |
|---|---|
| Home Mortgage | $954.00 |
| Electricity/Heating | $500.00 |
| Food | $400.00 |
| Recreation | $130.00 |
| Auto Insurance | $433.00 |
| Auto Payment | $317.06 |
| Transportation | $ 20.00 |

Page 2

In re: Patricia Ann Beckett
Case No. 10-30218

The Debtor also provides financial support to a 26-year-old son. This financial support, which includes paying for her son's car and insurance, totals about $400.00 per month.

At the time she filed for bankruptcy relief, the Debtor reported that she had assets worth $143,514.50. The Debtor's assets consisted primarily of two components: (1) her residence, owned jointly with her husband and valued at $133,700.00; (2) and a 2005 automobile, valued at $6,500.00. The Debtor reported that both these assets are encumbered by interests near or exceeding the full value of the collateral.

On the other side of the balance sheet, the Debtor set forth that she had liabilities totaling $347,843.00. Of her liabilities, $146,760.00 constituted secured debt, with the remaining debt, totaling $201,083.00, being unsecured. Of the Debtor's unsecured debt, the slight majority, approximately $120,000.00, consists of student-loan obligations. The remaining unsecured debt consists of consumer transactions, largely credit-card debt.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the United States Trustee ("UST") to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). These sections operate together, with § 707(b)(1) first setting forth the foundational mandate, providing that, where the granting of relief under

Page 3

In re: Patricia Ann Beckett
Case No. 10-30218

Chapter 7 would be an abuse, the debtor's case is to be dismissed. In the specific language of § 707(b)(1):

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

This provision serves the purpose of preventing debtors from simply walking away from their legal obligations by limiting Chapter 7 relief to only those debtors truly in "need" of such relief. *In re Oot*, 368 B.R. 662, 670 (Bankr. N.D.Ohio 2007).

Sections 707(b)(2) and 707(b)(3) set forth separate methodologies by which a determination of abuse is to be assessed under § 707(b)(1). First, under an objective 'means test' formula prescribed by § 707(b)(2), abuse will be presumed to exist when a 'disposable income' threshold is exceeded. In the alternative, § 707(b)(3) requires a court to undertake a subjective assessment of a debtor's financial situation, providing that abuse should be found to be present if it is determined that the debtor either filed their petition in bad faith or when the totality of the circumstances surrounding the debtor's financial situation demonstrate abuse. If either of the methods set forth in § 707(b)(2) or § 707(b)(3) then result in a finding of abuse, the case becomes ripe for dismissal under § 707(b)(1). *In re Longo*, 364 B.R. 161, 164 (Bankr. D.Conn. 2007).

For the two methodologies prescribed in § 707(b) for assessing abuse, the Court, having reviewed the Debtor's financial situation, finds that the dismissal of this case is warranted under § 707(b)(3). In full, this provision provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–

Page 4

In re: Patricia Ann Beckett
Case No. 10-30218

> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

For purposes of this provision, no allegations were made by the UST that the dismissal of the Debtor's case was warranted on account of "bad faith" as provided in § 707(b)(3)(A) – a position which this Court has no reason to question. However, the position of the UST, that the Debtor's case should be dismissed based on the totality of the Debtor's financial circumstances, as provided in § 707(b)(3)(B), is supported by the weight of the evidence in this case.

In bringing this action to dismiss the Debtor's case in accordance with § 707(b)(3)(B), the UST raised one overall ground for its position: "the Debtor is not needy."(Doc. No. 16, at pg. 1). This basis for dismissal is a determinative factor in assessing whether a case should be dismissed for abuse under § 707(b). In *In re Krohn*, the Sixth Circuit Court of Appeals remarked that in enacting § 707(b), "Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor." 886 F.2d 123, 126 (6th Cir. 1989). The Court in *In re Krohn*, then went on to hold that "[a]mong the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings." *Id*. Focusing on this factor, the UST stated that "[s]ince the Debtor is capable of repaying her unsecured creditors a substantial amount from just her disposable income, she should not be allowed the opportunity of a total discharge." (Doc. No. 16, at pg. 6).

On the position taken by UST, the Debtor, albeit hesitantly, acknowledged that she had $400.00 available per month to repay her creditors. When determining whether a debtor has the ability to repay their debts, an often used measure will concern whether a debtor can, after paying their necessary expenses, adequately fund a Chapter 13 plan of reorganization. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). In this case, such a threshold has been met, with the Debtor's ability to pay $400.00 a month into a plan of reorganization hardly constituting a trivial

Page 5

In re: Patricia Ann Beckett
Case No. 10-30218

amount. Over 60 months, a regular length for a Chapter 13 plan, this would result in a $24,000.00 distribution to unsecured creditors.

Even so, the Debtor's assessment, that she has $400.00 a month available to repay her creditors, seems to be more a floor rather than a ceiling. In this regard, one facet of this case particularly stands out. The Debtor, whether considered alone, or with her husband, enjoys an appreciable level of income, well in excess of the state median income.

At the time the Debtor filed for bankruptcy relief, the state-median income in Ohio for a debtor in a single-person household was $41,873.00, while the state-median income for a family of two in Ohio was $52,216.00.[1] Based on these figures, the Debtor and her husband, who have a combined annual salary of $104,182.68, enjoy a household income in an amount which is approximately twice the state median income for a like size family. Moreover, as this Court has remarked in previous cases brought to dismiss under § 707(b)(3)(B): "Under any measure, a debtor, having a stable annual salary of almost $100,000.00, will be hard pressed to establish that they do not have the ability to pay some of their unsecured debt, such as through funding a Chapter 13 plan of reorganization." *In re Brenneman*, 397 B.R. 866, 871 (Bankr. N.D.Ohio 2008), *citing In re Wadsworth*, 383 B.R. 330, 334 (Bankr. N.D.Ohio 2007).

Even considering their lack of a true marital relationship, and taking the Debtor's husband out of the picture, the Debtor's yearly salary of $49,484.52 still exceed the state median income for a single person with no dependents by a sum approaching $8,000.00. On its face, therefore, given the level of income enjoyed by the Debtor, whether alone or with her husband, it is hard to accept an inability on the part of the Debtor to repay at least a portion of her voluntarily incurred obligations.

---

[1] http://www.justice.gov/ust/eo/bapcpa/20091101/bci_data/median_income_table.htm.

Page 6

In re: Patricia Ann Beckett
Case No. 10-30218

In response, the Debtor raised what can be construed as two arguments. First, the Debtor argues that, despite outward appearances, her ability to repay her obligations is constrained by the particular relationship she maintains with her husband, and the help she provides to her son. Second, citing to this Court's previous decision in *In re Ramlow*, 417 B.R. 479 (Bankr. N.D.Ohio 2009), the Debtor put forth that she is need of Chapter 7 relief because, in addition to her garden variety consumer debt, she is "encumbered by staggering student loan debt." (Doc. No. 33, at pg. 2). These points are now addressed in order.

Expenses incurred by a debtor to support a nondebtor spouse or unemancipated child will be allowed as a matter of course when assessing a debtor's ability to pay for purposes of § 707(b)(3)(B).[2] However, where a nondebtor spouse or emancipated child has the financial means or ability to support themselves, a debtor will not be permitted to use Chapter 7 of the Bankruptcy Code as a way in which to divert financial resource away from their creditors and to their family members. *See, e.g., In re Miller*, 335 B.R. 335, 343-44 (Bankr.E.D.Pa.2005) (nondebtor spouse earning $40,000 per year should "bear her own expenses."); *In re Welch*, 344 B.R. 50, 55 (Bankr. M.D.Pa. 2005) ($416 per month paid for a vehicle for a 25-year old married adult child is unnecessary as is the $120 insurance associated with the vehicle).

In this case, the weight of the evidence shows that the Debtor seeks to use her income to provide financial support to two family members, neither of whom have any true need for such support. At the Hearing held on the UST's Motion to Dismiss, the Debtor testified that she and her

---

[2] To hold otherwise, would place some debtors in the difficult position of having to violate Ohio law to obtain Chapter 7 relief. Ohio law in this regard provides that, unless unable, a "married person must support the person's self and spouse out of the person's property or by the person's labor." O.R.C. § 3103.03(A). For children, Ohio law also provides that the "parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor." *Id.*

Page 7

In re: Patricia Ann Beckett
Case No. 10-30218

husband generally share household expenses, but that her overall financial contribution to the household is greater. There is, however, no duty on the part of the Debtor to provide such support.

The Debtor's husband earns $54,698.16 per year, slightly more than the Debtor's annual salary of $49,484.52. The Debtor's husband is, thus, fully capable of supporting himself. Moreover, as a practicable matter, given that the Debtor and her husband are estranged, the Debtor's financial support to her husband seems a very charitable gesture, but one that the Debtor's creditors should not have to support. Even if not the case, given her husband's greater salary, his contribution to the necessary household expenses should outweigh the Debtor's contribution, thereby allowing the Debtor to retain a greater percentage of her income which, in turn, could be used to repay her creditors. *See In re Staub*, 256 B.R. 567, 571 (Bankr. M.D.Pa. 2000) (a nondebtor spouse's income may count when ascertaining a debtor's ability to pay for purposes of § 707(b)).

Similarly, no indication was given that the Debtor's 26-year old son, to whom the Debtor is providing support totaling approximately $400.00 per month, is not perfectly capable of supporting himself. Therefore, again, the Debtor's creditors should not be required to bear the cost of such support, notwithstanding the justification offered by the Debtor – that she is just trying to be fair in light of the fact that she had previously provided financial support to another son. Accordingly, for these reasons, the Court must reject the Debtor's position that the support she provides to both her husband and son cannot be considered when assessing her ability to pay for purposes of § 707(b)(3)(B).

The Debtor's next argument in favor of allowing her Chapter 7 case to proceed concerns the large amount of student-loan debt she has incurred. Particularly, the Debtor takes the position that, especially considering that she is 58-years of age, the nondischargeable character of her large student-loan obligations makes any attempt to formulate a Chapter 13 plan futile given that at the end of the plan she will still be responsible for the obligations as well as any accrued interest.

As an overall matter, this Court has not been receptive to the Debtor's argument that student-loan obligations should be afforded preferential treatment in assessing the propriety of dismissing a debtor's case under § 707(b)(3). In *In re Kaminski*, this Court explained:

> . . . in the context of a § 707(b)(3) action, this Court has not viewed favorably debtors who seek to allocate their financial resources to fully pay a student loan while not doing the same for their other unsecured creditors. The reason: it goes against the core principle of bankruptcy that similarly situated creditors are entitled to an equal distribution of estate assets. The Debtors' position, that payments on student-loan obligations are entitled to special treatment because, being nondischargeable debts, they are not voluntary has been rejected by the Court . . . .
>
> The fact . . . that an obligation to pay a debt will survive bankruptcy, does not, on that basis alone, mean that a debtor has the right to treat the claim differently. Otherwise, all nondischargeable debts would be entitled to favorable treatment, including those debts which arise from a debtor's wrongful conduct – *e.g.*, fraud, embezzlement and larceny. 11 U.S.C. § 523(a)(2)/(4).

387 B.R. 190, 197 (Bankr.N.D.Ohio 2008) (internal quotations and citations omitted). *See also In re Reimer*, No. 07-32787, 2008 WL 495537 (Bankr. N.D.Ohio 2008).

At the same time, the Debtor's position cannot be rejected outright. Previously, this Court has held that the totality of the circumstances standard for dismissal under § 707(b)(3)(B) is not conducive to absolutes, and issues presented to the Court must be assessed on a case-by-case basis. *In re Thurston*, Case No. 07-350922008 WL 3414138 *5 (Bankr. N.D.Ohio 2008).

When operating under this approach for student-loans, this Court has denied a motion brought by the UST to dismiss under § 707(b)(3) when at least a couple of conditions were present: (1) there existed a large student-loan obligation which, given its nondischargeable character, would continue to increase in principal during the duration of a Chapter 13 plan; and (2) as compared to

the student-loan obligations, the distribution to the debtor's other unsecured creditors would be minimal under a Chapter 13 plan. *Id.* In this matter, however, only the first condition is present.

The Debtor's unsecured debts total $201,083.00, of which only a slight majority, approximately $120,000.00, consists of student-loan obligations. As a result, the second condition is not present because any pro-rata distribution to the Debtor's non-student-loan creditors would be more than a *de minimis* percentage – *e.g.*, approximately 40%. The Debtor's reliance on this Court's prior decision in *In re Ramlow* does not alter this equation.

In *In re Ramlow*, the Court denied a motion to dismiss brought by the UST under § 707(b)(3) under conditions which, as the Debtor points out, have parallels with her case. First, in *In re Ramlow* the debtor, as in this case, had a large amount of unsecured debt, with some of the debt constituting nondischargeable student-loan obligations. Also similar to this case, the debtor in *In re Ramlow* had the ability to pay at least $400.00 to $500.00 into a Chapter 13 plan.

Even so, this Court found the matter in *In re Ramlow* to be a very close call and, in this respect, a number of distinguishable features of *In re Ramlow* make its applicability to this case improper. First, in *In re Ramlow*, the debtor made an concerted effort to minimize her expenses. For those reasons already explained, however, the Debtor here has not completely done this.

Another distinguishing feature: In *In re Ramlow*, the debtor filed for bankruptcy protection due to unforseen circumstances, namely a divorce. Also, because of the divorce, a significant portion of the debtor's unsecured debt in *In re Ramlow* stemmed from a deficiency which arose when the debtor's marital residence was sold in foreclosure. By comparison, no unforseen circumstances precipitated the Debtor's bankruptcy in this case; rather, the Debtor's bankruptcy filing appears to be nothing more than the result of a gradual accumulation of consumer debt. Finally, unlike in this case, where the Debtor is under no legal obligation to support any dependents, the debtor in *In re*

In re: Patricia Ann Beckett
Case No. 10-30218

*Ramlow* was supporting two teenage sons, thus potentially subjecting the debtor's budget to periods of instability.

These distinguishing facts are critical. In *In re Krohn*, the Sixth Circuit set forth that in determining whether to dismiss a case under § 707(b), a bankruptcy court, in addition to a debtor's ability to pay, should consider matters such as whether the debtor "was forced into Chapter 7 by unforeseen or catastrophic events"; "whether the debtor enjoys a stable source of future income"; and whether the debtor's "expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." 886 F.2d at 126-27.

In conclusion, the burden of proof to support dismissal based upon § 707(b)(3)'s "totality of the circumstances" standard, and a debtor's ability to pay, is upon the movant, the UST. *In re Baker*, 400 B.R. 594, 597 (Bankr. N.D.Ohio 2009). For those reasons set forth herein, the UST has met this burden, with the evidence tending to show that the Debtor has some ability to repay her unsecured debt. As such, § 707(b)(1) requires that this Court dismiss this case unless the Debtor timely converts her Chapter 7 case. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 11

In re: Patricia Ann Beckett
Case No. 10-30218

    Accordingly, it is

    **ORDERED** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

    **IT IS FURTHER ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, October 15, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

    Dated: September 30, 2010

    _____
    Richard L. Speer
    United States
    Bankruptcy Judge

10-30218-rls    Doc 34    FILED 09/30/10    ENTERED 09/30/10 16:26:36    Page 12 of 13

In re: Patricia Ann Beckett
Case No. 10-30218

    Accordingly, it is

    **ORDERED** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

    **IT IS FURTHER ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, October 15, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

    Dated: September 30, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 30th day of September, 2010 to:

Patricia Ann Beckett
3420 Drummond
Toledo, OH 43606

Scott A Ciolek
520 Madison Ave, #820
Toledo, OH 43604

James M Perlman
416 N Erie St, #100
Toledo, OH 43604

Linda Maria Battisti ust21
Office of the US Trustee
201 Superior Ave, #441
Cleveland, OH 44114

Louis J Yoppolo
1200 Edison Plaza
300 Madison Ave
Toledo, OH 43604

/s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court